IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| **JIMMY JOHN'S FRANCHISE, LLC,**<br><br>Movant,<br><br>v.<br><br>**WINKEL, PARKER & FOSTER, CPA, P.C.,**<br><br>Respondent. | Case No. 3:24-mc-9 |

**JIMMY JOHN'S FRANCHISE, LLC'S**
**BRIEF IN SUPPORT OF MOTION TO COMPEL**

Jimmy John's Franchise, LLC ("JJF"), Movant in this miscellaneous matter, hereby files this Brief in Support of Its Motion to Compel under Federal Rule of Civil Procedure 45(d)(2)(B)(i) for an order compelling a nonparty, the Custodian of Records of Winkel, Parker & Foster CPA, P.C. ("Respondent") to respond to a subpoena for documents issued in an underlying arbitration proceeding, *C & C Resources, Inc. and Carl Dissette v. Jimmy John's Franchise, LLC*, Case No. 01-21-0016-1707, pending before the American Arbitration Association (the "Arbitration") and, in support thereof, submits and incorporates the accompanying Declaration of Matthew J. Kramer Under 28 U.S.C. § 1746 (the "Kramer Declaration" or "Kramer Dec. at ¶ - "), and states as follows.

**BACKGROUND**

JJF is the Respondent in the underlying Arbitration. Broadly, the claims and counterclaims in the Arbitration relate to the expiration of a Franchise Agreement to operate a Jimmy John's franchised restaurant in Chicago, Illinois. Claimants have asserted various claims related to the expiration of the Franchise Agreement and their attempts to transfer the restaurant prior to and after the expiration of the Franchise Agreement. JJF has filed counterclaims related to Claimants'

violation of a post-term non-compete agreement, arising out of Claimants' involvement with the Jersey Mike's franchise system. (Kramer Dec. at ¶ 5).

In connection with the Arbitration proceeding, the Panel, at JJF's request, issued a subpoena for documents to Respondent (the "Subpoena"). (*Id.* at ¶ 6). Respondent is an accounting firm that provides many and varied financial services to Claimants in the Arbitration—C & C Resources, Inc. and Carl Dissette. (*Id.*) One of the accountants employed with Respondent—Myrna Neumann—is Mr. Dissette's mother-in-law, and he communicates with her regularly about all aspects of his business dealings. (*Id.* at ¶ 12). A true and correct copy of the Subpoena, along with the Affidavit of Service, are attached as Exhibits 1 and 2 to the Kramer Declaration. (*Id.* at ¶¶ 6, 9, Exs. 1 and 2).

Claimants had filed a Motion to Quash the Subpoena prior to its issuance, and that Motion was briefed and argued extensively before the Panel. The Panel denied Claimants' Motion to Quash on November 29, 2023. (*Id.* at ¶ 8).

One of the principal categories of information sought in the Subpoena is email communications between Respondent and Mr. Dissette related to his involvement with the Jersey Mike's franchise system. (*Id.* at ¶ 7).

On December 29, 2023, Ms. Neumann, on behalf of her firm, sent several emails with PDF attachments, purportedly in response to the Subpoena. (*Id.* at ¶ 11). There appear to be two (2) emails in the production, each having little to nothing to do with the documents called for in the Subpoena—one addressed "Existing Conditions" at one of several buildings that Mr. Dissette owns where a Jersey Mike's is operating, and another relates to clarification of a lien issue on certain of these properties. Respondent has not provided any information about the criteria that

were used to search for these documents, but it is exceedingly clear that no search terms were run over email servers to look for the documents called for in the Subpoena. (*Id.*, Ex. 3)

After receiving the deficient production, JJF's counsel—Matthew Kramer—emailed Ms. Neumann to address a supplement that would be required, including, primarily, running search terms over emails to ensure a good-faith collection and production. (*Id.* at ¶ 12, Ex. 4). As Mr. Kramer stated, Mr. Dissette's document production in the underlying matter confirms that there were many more relevant e-emails sent to and from Ms. Neumann than Respondent produced. (*Id.*) At all times, Mr. Kramer ensured Ms. Neumann that JJF would be reasonable in its requested protocol, and suggested that Ms. Neumann direct him to an attorney for Respondent to ensure complete and efficient compliance with the subpoena. Ms. Neumann did not respond to that email. (*Id.*).

Mr. Kramer sent a follow-up email to Ms. Neumann on January 17, 2024. Ms. Neumann did not respond to that email. (*Id.* at ¶ 13, Ex. 5).

After a brief delay in the case, during which Claimants in the underlying case obtained new counsel and the parties set a revised pre-hearing schedule, Mr. Kramer again reached out to Ms. Neumann on April 1, 2024, requesting that Ms. Neumann commit to searching her emails using search terms that JJF would provide. (*Id.* at ¶ 14, Ex. 6). Ms. Neumann responded on April 3, 2024, and claimed to be unsure of what was being requested of her. (*Id.*) She also mistakenly suggested that all of the emails JJF was seeking could be obtained from Claimants directly in the underlying Arbitration. (*Id.*) As much as one might assume (or hope) that to be true, it is not, unfortunately, and JJF is entitled to a good-faith production from Respondent, even if it yields some overlap with Claimants' production in the underlying matter. (*Id.*). Mr. Kramer said as much to Ms. Neumann in response to her, and again implored her to agree to run a reasonable set

of search terms over her emails.  (*Id.*)  He also again asked if Respondent had an attorney that could assist with compliance.  Ms. Neumann never responded to that email.  (*Id.*).

On April 29, 2024, before filing this Motion, Mr. Kramer sent an e-mail to counsel for Claimants in the underlying Arbitration, to inform them that Movant planned to file this Motion and to inquire as to whether Claimants wanted to discuss the prospect of their clients either requesting or instructing that one of their vendors comply with the Subpoena.  Counsel did not respond to that e-mail.  (*Id.* at ¶ 15).

JJF has more than exhausted its good-faith efforts to obtain voluntary compliance with the Subpoena, and it is now ripe for enforcement in this Court.

## **ARGUMENT**

Subpoenas issued in arbitration proceedings are enforceable in federal courts in this Circuit in the same manner as a subpoena issued in any other proceeding.  *See, e.g.*, *In re Security Life Ins. Co. of America*, 228 F.3d 865, 870-71 (8th Cir. 2000) ("We thus hold that implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing.").  As stated above, Respondent was properly served with a subpoena for documents and it was obligated to comply with it, subject to any objections it might timely assert.

Federal Rule of Civil Procedure 45 permits a party to issue a subpoena commanding a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  A person commanded to produce and permit inspection, copying, testing or sampling must comply, serve a written objection or move to quash according to the procedures set forth in Rule 45.  Fed. R. Civ. P. 45(d)(2)(B) and Fed. R. Civ. P. 45 (d)(3).

Additionally, the permissible scope of discovery from a nonparty under Rule 26 is generally the same as that applicable to discovery sought from parties to the litigation. *Tucker v. Am. Int'l Group, Inc.* 281 F.R.D. 85, 91 (D.C. Conn. 2012). Furthermore, any objections must be in writing and served timely, before the earlier of the time specified for compliance or 14 days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B).

## **ISSUES PRESENTED BY THIS MOTION**

Respondent has never issued a formal objection to the substance of the Subpoena. It has simply refused to conduct a basic electronic search of its emails, with Ms. Neumann as the only custodian. JJF has offered to negotiate with Ms. Neumann as to those searches, and stands ready to do so, but she has refused to engage on the subject. Respondent unquestionably has relevant documents related to an issue of consequence in the underlying arbitration—primarily communications with and concerning Mr. Dissette and his involvement with the development of certain Jersey Mike's franchises in the Chicago, Illinois area, which JJF asserts is in material breach of non-compete obligations in Claimants' franchise agreements with JJF. JJF learned of Ms. Neumann's involvement from other parties' productions, and it issued the subpoena to ensure that it has a complete record on this critical issue as the parties prepare to take depositions and prepare the case for a final evidentiary hearing in August 2024.

In the absence of meaningful engagement on the issue of compliance with the Subpoena, JJF proposes that the Court order Respondent to search its emails, according to the following search protocol:

*Custodians*:

- Myrna Neumann

*Date Range*

- January 1, 2021 through the present.

*Search Terms*

- jimmyjohnsub@aol.com or any other email utilized by Carl Dissette and any of the following terms:
    - jersey or "sub above"
    - "JM"
    - gift
    - $30,000
    - non-compete or noncompete
    - arbitration

## CONCLUSION

JJF respectfully requests that the Court enter an order Granting the Motion to Compel and order Respondent to comply with the subpoena, as outlined above, by no later than May 15, 2024.

BETTY, NEUMAN & McMAHON, P.L.C.

By:  */s/ Martha L. Shaff*
     Martha L. Shaff   #AT0007215

1900 East 54th Street
Davenport, IA 52807-2708
T: 563-326-4491
F: 563-326-4498
E: martha.shaff@bettylawfirm.com
**ATTORNEYS FOR MOVANT
JIMMY JOHN'S FRANCHISE, LLC**